IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHEILA HEFFNER, | ) | CASE NO. 1:09 CV 1377 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE McHARGH |
| | ) | |
| MICHAEL J.ASTRUE, | ) | |
| Commissioner | ) | |
| of Social Security, | ) | **MEMORANDUM OPINION** |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule.  The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Sheila Heffner's application for Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§416(i) and 423, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS the decision of the Commissioner.

## I.  INTRODUCTION and PROCEDURAL HISTORY

On December 8, 2004, Plaintiff filed an application for Disability Insurance benefits, alleging a disability onset date of April 24, 2004 due to neurological problems (Tr. 96). Plaintiff's applications for benefits were denied initially and upon reconsideration (Tr. 50-51). Plaintiff requested a hearing following the denial of her application at these levels (Tr. 58-60). On January 24, 2007, Plaintiff appeared with counsel and testified before Administrative Law Judge Morley White ("the ALJ") (Tr. 658-719).  Medical Expert Hershel Goren, M.D. (the

"ME"), a board certified neurologist, and Vocational Expert Barbara Myers (the "VE") also appeared and testified at Plaintiff's hearing (Tr. 688-97, 710-18).  The ALJ issued a written decision on February 23, 2007 in which he found at Step Five of the five-step sequential evaluation[1] that although Plaintiff could not perform her past relevant work, Plaintiff had the residual functional capacity ("RFC") to perform a range of light work existing in significant numbers in the national economy and, therefore, was not disabled.  Plaintiff requested review from the Appeals Council, but it denied Plaintiff's request, thereby making the ALJ's decision the final decision of the Commissioner (Tr. 4-8).  On appeal, Plaintiff claims that the ALJ's decision is not supported by substantial evidence.

---

[1]  The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. § 404.1520(a). The Sixth Circuit has summarized the five steps as follows:

(1)     If a claimant is doing substantial gainful activity – i.e., working for profit – he is not disabled.

(2)     If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

(3)     If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4)     If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

(5)     Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

Born on June 14, 1966, Plaintiff was 40 years old at the time of the ALJ's determination and a "younger individual" for purposes of the Social Security regulations (Tr. 21, 661).  *See* 20 C.F.R. § 404.1563.  Plaintiff has a marginal education (Tr. 21, 662).  She has past relevant work as a bartender, adult book store manager, and gas station assistant manager (Tr. 21).

## II.  <u>DISABILITY STANDARD</u>

A claimant is entitled to receive Disability Insurance Benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. § 423.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20 C.F.R. § 404.1505.

## III.  <u>STANDARD OF REVIEW</u>

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards.  *See* *Cunningham v. Apfel*, 12 Fed. Appx. 361, 362 (6th Cir. June 15, 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  *See* *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed.  *Id.*  The Commissioner's determination

3

must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Secretary of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.  ANALYSIS

**A.      Whether the ALJ Erred in His Determination that Plaintiff Does Not Meet a Listing**

Plaintiff argues that the ALJ erred in failing to find that Plaintiff meets the requirement of Listing 12.04 for affective disorders, Listing 12.06 for anxiety disorders, and/or Listing 11.14 for peripheral neuropathy. The court addresses Plaintiff's arguments with respect to each of these Listings separately below.

The burden of proof for establishing that an impairment meets or equals the requirements of a listed impairment rests with the claimant. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). To meet a listed impairment, a claimant must satisfy all of the criteria in the listing. *See Roby v. Comm'r of Soc. Sec.*, 48 Fed. Appx. 532, 536 (6th Cir. 2002) (citing *Hale v. Secretary of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987)).

Listing 12.04 provides in relevant part:

12.04 Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged

emotion that colors the whole psychic life; it generally involves either depression or elation.  The required level of severity for these disorders is met with the requirements in both A and B are satisfied.

A.       Medically documented persistence, either continuous or intermittent, of one of the following:

1.       Depressive syndrome characterized by at least 4 of the following:

        a.       Anhedonia or pervasive loss of interest in almost all activities; or

        b.       Appetite disturbance with change in weight; or

        c.       Sleep disturbance; or

        d.       Psychomotor agitation or retardation; or

        e.       Decreased energy; or

        f.       Feelings of guilt or worthlessness; or

        g.       Difficulty concentrating or thinking; or

        h.       Thoughts of suicide; or

        i.       Hallucinations, delusions, or paranoid thinking; or

2.       Manic syndrome characterized by at least three of the following:

        a.       Hyperactivity; or

        b.       Pressure of speech; or

        c.       Flight of ideas; or

        d.       Inflated self-esteem; or

        e.       Decreased need for sleep; or

        f.       Easy distractibility; or

        g.       Involvement in activities that have a high probability of painful consequences which are not recognized; or

        h.      Hallucinations, delusions or paranoid thinking; or

3.      Bipolar syndrome with a history of episodic period manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes); AND

B.      Resulting in at least two of the following:

1.      Marked restriction of activities of daily living; or

2.      Marked difficulties in maintaining social functioning; or

3.      Marked difficulties in maintaining concentration, persistence, or pace; or

4.      Repeated episodes of decompensation, each of extended duration.

20 C.F.R. pt 404, Subpt. P, App. 1, § 12.04(A), (B).

Plaintiff argues that she meets Part A of Listing 12.04 because she has medically documented appetite disturbance with change in weight (tr. 120, 183, 521, 564, 569); sleep disturbance (tr. 106, 138, 469, 534, 556, 558, 588, 601, 614); decreased energy (tr. 544); feeling of guilt or worthlessness (tr. 556, 572, 655-56); and difficulty concentrating.  She argues that she meets part B of the Listing because she has marked difficulties in maintaining concentration, persistence and pace and marked difficulties in maintaining social functioning.  In support of her argument that she has marked difficulties in maintaining concentration, persistence and pace, Plaintiff points to the report completed by psychiatrist Dr. Duterte indicating that Plaintiff "is able to concentrate for brief periods of time but the anxiety often interrupts this" (tr. 462), and his assessment that Plaintiff's concentration is "poor" (Tr. 558).  Plaintiff also points to the statements made by her sisters that she "doesn't seem to mentally follow through with things," that "she has difficulty staying on task," and that in numerous conversations Plaintiff would start "looping her conversation and repeating herself and starting from the beginning" (Tr. 703, 657).

In support of her argument that she has marked difficulties in maintaining social functioning, Plaintiff points to her statements to Dr. Duterte and others that she "only feels more depressed if she is around people" (tr. 544); that she cannot talk to people because "every time I open my mouth, even just to say hello to somebody, I start crying" (tr. 682); that she does not do much outside and stays inside most of the time (tr. 572, 534, 544); and that her family advised her to contact a psychiatrist because she was crying so much (tr, 578).

The ALJ found that Plaintiff did not satisfy the B criteria of the Listing because she had only mild restrictions in daily living, moderate restrictions in maintaining social functioning, moderate restrictions in maintaining concentration, persistence and pace, and no episodes of deterioration or decompensation (Tr. 18).  The court finds that substantial evidence supports the ALJ's findings.  In making his determination that Plaintiff does not meet Listing 12.04, the ALJ noted Dr. Goren's testimony at the hearing that Plaintiff does not meet any Listing, and that Dr. Goren specifically considered Plaintiff's depression under Listing 12.04.  Significantly, Plaintiff points to no medical opinion stating that she meets Listing 12.04; instead, Plaintiff points almost exclusively to her own testimony, her sisters' statements, and Plaintiff's own reports to medical sources.  Although psychiatrist Dr. Duterte opined that Plaintiff would be able to concentrate only for brief periods of time due to pain and anxiety and that she could sustain work tasks for only half of the work day, for the reasons explained more thoroughly below, the ALJ's decision to assign less weight to that opinion is supported by substantial evidence.  The court also finds, for reasons stated below, that the ALJ's decision to afford less than full weight to Plaintiff's statements regarding her symptoms is supported by substantial evidence.  As noted above, it is Plaintiff's burden to demonstrate that she satisfies all the criteria of the Listing.  Based on the

above, the court concludes that the ALJ did not err in determining that Plaintiff does not meet

Listing 12.04.

Plaintiff also argues that she meets Listing 12.06.  Listing 12.06, anxiety disorders,

provides:

> In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied.
>
> A.    Medically documented findings of at least one of the following:
>
> 1.    Generally persistent anxiety accompanied by three out of four of the following signs or symptoms:
>
> > a.    Motor tension; or
> >
> > b.    Autonomic hyperactivity; or
> >
> > c.    Apprehensive expectation; or
> >
> > d.    Vigilance and scanning; or
>
> 2.    A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity or situation; or
>
> 3.    Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or
>
> 4.    Recurrent obsessions or compulsions which are a source of marked distress; or
>
> 5.    Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress; AND

B.      Resulting in at least two of the following:

1.      Marked restriction of activities of daily living; or

2.      Marked difficulties in maintaining social functioning; or

3.      Marked difficulties in maintaining concentration, persistence or pace; or

4.      Repeated episodes of decompensation, each of extended duration . . . .

20 C.F.R. pt 404, Subpt. P, App. 1, § 12.06(A), (B).

Listing 12.06 requires proof of the same B criteria as Listing 12.04, and Plaintiff's arguments that she meets the B criteria of each of these two listings are identical.    For the reasons stated above, the court finds that the ALJ did not err in his assessment that Plaintiff's mental impairments do not cause marked difficulties in any of the B criteria categories and that Plaintiff has not experienced any extended episodes of decompensation.  Based on the above, the court concludes that Plaintiff has failed to demonstrate that she meets Listing 12.06.

Plaintiff also argues that she meets the requirements of Listing 11.14.  To meet Listing 11.14, a claimant must show peripheral neuropathies "[w]ith disorganization of motor function as described in 11.04B, in spite of prescribed treatment." 20 C.F.R. pt 404, Subpt. P, App. 1, § 11.14. Section11.04B states: "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dextrous movements, or gait or station (see 11.00C). 20 C.F.R. pt 404, Subpt. P, App. 1, § 11.04(B). Section 11.00C provides:

Persistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral or cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combination, frequently provides the sole or partial basis for decision in cases of neurological impairment.  The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hand and arms.

20 C.F.R. pt 404, Subpt. P, App. 1, § 11.00(C).

Plaintiff argues that she meets Listing 11.14 because she has significant and persistent disorganization of motor function that interferes with her ability to use her hands, arms, legs and feet.  In support of her allegations of sustained motor dysfunction in her upper extremities, Plaintiff points to her testimony that she frequently drops objects and that she has difficulty writing due to pain (Tr. 675, 677).  She also points to the portion of her sister's lay witness statement that reads, "I know if her feet and hands still worked well I would not be writing this letter asking for your help," and her sister's testimony that Plaintiff has difficulty writing (Tr. 674, 700).  In support of her allegations regarding sustained motor dysfunction in the lower extremities, Plaintiff claims that she falls a lot, and that although she does not use a cane or walker, she must "wall walk" and she cannot walk for any distance (Tr. 687, 700).  Plaintiff further notes the physical RFC report completed by Dr. Rath and Maria Congbalay, observing that Plaintiff "did walk with an abnormal gait due to parethesias" (Tr. 109).  Plaintiff also points to Dr. Dyko's note in 2006 indicating that Plaintiff was able to walk with difficulty (Tr. 130).

Although the ALJ did not specifically discuss in his written decision why he found that Plaintiff does not meet Listing 11.14, he noted Dr. Goren's testimony at the hearing that Plaintiff did not meet any listing and that Dr. Goren specifically considered whether Plaintiff met Listing 11.14.  He also discussed Dr. Goren's findings in detail.  In particular, the ALJ noted Dr. Goren's determination that although the physician reviewing Plaintiff's electromyography results found them to be normal, Dr. Goren felt the results demonstrated mild peripheral neuropathy.  He also noted Dr. Goren's observation that Plaintiff had an unsteady gait upon examination. As noted above, to meet Listing 11.14, Plaintiff must demonstrate "[s]ignificant

and persistent disorganization of motor function in two extremities, resulting in *sustained disturbance of gross and dextrous movements, or gait or station*." 20 C.F.R. pt. 404, Subpt. P, App. 1, § 11.04(B) (emphasis added). Plaintiff points principally to her own testimony regarding her functional limitations to support her claim that she meets the Listing. She also points to an RFC report indicating that she "did walk with an abnormal gait due to parethesias" and Dr. Dyko's report that Plaintiff walked with difficulty (Tr. 110, 130). However, Dr. Goren acknowledged that Plaintiff has an unsteady gait and still found that Plaintiff does not meet Listing 11.14. Moreover, the fact that Plaintiff walks with an unsteady gait does not demonstrate necessarily that her neuropathy has resulted in disorganization or deficits in motor function that are sufficiently severe to meet the level of impairment necessary under Listing 11.14. This is particularly so in light of the fact that the record contains no recommendations or reports from medical sources that Plaintiff should use an ambulatory device or wheelchair or that Plaintiff must use a wall in order to ambulate effectively (Tr. 20). Additionally, as the ALJ noted in assessing Plaintiff's subjective complaints, Plaintiff has full strength in her upper and lower extremities and despite her complaints, she is able to live independently. Based on the above, the court concludes that the ALJ did not err in finding that Plaintiff does not meet Listing 11.14.

**B.** **Whether the ALJ Erred in Assessing Plaintiff's Allegations of Disabling Symptoms**

Plaintiff next argues that the ALJ erred in his assessment of Plaintiff's allegations of disabling symptoms and by assigning less than full weight to Plaintiff's complaints of disabling pain.

The Court recognizes that pain alone may be sufficient to support a claim of disability. *See Grecol v. Halter,* 46 Fed. Appx. 773, No. 01-3407 (6th Cir. Aug 29, 2002) (unpublished);

11

*King v. Heckler*, 742 F.2d 968, 974 (6th Cir 1984).  However, a claimant's subjective assertions of pain, standing alone, will not suffice.  In most disability benefits cases, for the ALJ to find disabling pain, there must be: (1) objective evidence of an underlying medical condition; and (2) either, (a) objective medical evidence *confirming* the severity of the alleged pain arising from that medical condition, or (b) the objectively determined medical condition must be of a severity which can *reasonably be expected* to give rise to the alleged pain.  *See Buxton v. Halter* 246 F.3d 762, 773 (6th Cir. 2001);  *Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 852-53 (6th Cir. 1986)*.

The *Duncan* test, however, is not the end of the analysis.  The Commissioner must consider other factors that may or may not corroborate Plaintiff's allegations of pain.  *See Walters v. Comm'r of Soc. Sec.*, 127 F. 3d 525,531 (6th Cir. 1997); *Felisky v. Bowen*, 35 F.3d at 1039; 20 C.F.R. § 416.929(c)(2).  The other factors may include: statements from the claimant and the claimant's treating and examining physicians; diagnosis; efforts to work; the claimant's daily activities; the location, duration, frequency and intensity of the symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any medication taken to alleviate symptoms; treatment, other than medication, the claimant receives to relieve pain; measures used by the claimant to relieve symptoms; and any other factors concerning functional limitations due to symptoms. *See Felisky*, 35 F.3d at 1039-40; 20 C.F.R. § 416.929(a), (c)(3).

In evaluating a claimant's subjective complaints of pain, the ALJ properly may consider the claimant's credibility, and the ALJ's credibility determination is entitled to great deference. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004); *see also Walters*, 127 F.3d at 531 (stating that and ALJ's "findings based on the credibility of the applicant are to be accorded

great weight and deference, particularly since an [ALJ] is charged with the duty of observing a witness's demeanor and credibility").  Furthermore, an ALJ may properly discount a claimant's credibility where he finds contradictions among the medical reports, a claimant's testimony and other evidence.  *Warner*, 375 F.3d at 392; *see also* *Blacha v. Sec. of Health and Hum. Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (noting that an ALJ may consider a claimant's household and social activities in evaluating his or her assertions of pain and disabling symptoms).

A review of the ALJ's opinion reflects that the ALJ applied the appropriate framework in assessing whether Plaintiff is disabled by her pain and that substantial evidence supports his assessment of Plaintiff's symptoms and credibility.  In evaluating Plaintiff's subjective complaints, the ALJ first discussed Plaintiff's testimony, including her statements that the pain and numbness in her legs forces her to "wall walk," that she has a propensity for falling, and that walking increases her pain (Tr. 20).  The ALJ also discussed Plaintiff's statements that the pain in her upper extremities causes her to drop objects, that she cannot feel what she is holding and that it is difficult for her to write (Id.).  He then discussed Plaintiff's statements that she still has pain despite compliance with her medications, that she has anxiety attacks approximately three times a week that last for three hours and that she has a history of seizures with the last one occurring in November 2006.  He also noted Plaintiff's sister's testimony, including her statement that Plaintiff would have to take two days off if she attempted to work an eight-hour day. The ALJ also discussed the medical evidence at length in assessing the weight to be assigned to the various medical opinions and in determining Plaintiff's RFC.

In assigning less than full weight to Plaintiff's complaints, the ALJ stated that although the objective evidence demonstrates that Plaintiff has an unsteady gait, there have been no

medical recommendations for an ambulatory device or wheelchair or any reports confirming Plaintiff's alleged need to use a wall for support when ambulating (Id.).  The ALJ further noted that although Plaintiff has complained that she drops things as a result of problems in her upper extremities, examination findings have shown that Plaintiff has full motor strength in her upper and lower extremities and no atrophy (Tr. 20-21).  The ALJ also noted that despite Plaintiff's complaints of disabling symptoms, Plaintiff is able to live independently and the record demonstrates that Plaintiff is capable of greater activity than she claims she is able to do (Tr. 21). Finally, the ALJ took note of the fact that Plaintiff apparently is able to sustain a smoking habit, despite her claim that she is unable to afford her medications.  Although Plaintiff complains that the ALJ's statement regarding her smoking mischaracterizes her testimony, the court does not believe that the ALJ was required necessarily to take Plaintiff's explanation at face value, since the ALJ found various inconsistencies between Plaintiff's testimony and the other record evidence, and because his findings regarding Plaintiff's credibility are to be afforded great deference. *See* *Walters*, 127 F.3d at 531.  Based on the above, the court finds that substantial evidence supports the ALJ's credibility determination.

**C.**     **Whether the ALJ Erred in His Assessment of the Opinions of Plaintiff's Treating Physicians**

Plaintiff next argues that the ALJ erroneously disregarded the opinions of her treating primary care physician, Dr. Gemma, and her treating psychiatrist, Dr. Duterte.

The opinions of a treating physician generally are entitled to "substantial, if not controlling deference."   *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). But this level of deference is appropriate only where the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other

14

substantial evidence in the case record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). An ALJ is not bound by the opinion of a treating physician. If the treating physician's conclusions are based, in large part, on a plaintiff's subjective complaints, an ALJ's decision to disregard the doctor's opinion is proper. *See Young v. Secretary of Health & Human Servs.* 925 F.2d 146, 151 (6th Cir. 1990). However, if an ALJ rejects the opinion of a treating physician, he must clearly articulate "good reasons" for doing so. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").

Dr. Gemma completed a Work Ability Form on September 6, 2006. In the form, Dr. Gemma indicated that Plaintiff would be unable to lift or carry any amount of weight, bend, twist or turn, reach below the knee, push or pull, squat or kneel, stand or walk for any portion of the workday (Tr. 397). He explained that Plaintiff has severe neuropathic pain in her arms and legs that occurs with minimal exertion and light housework. He further indicated that Plaintiff must be supine for a large portion of the day. In response to the question, "What tests or other objective findings support this diagnosis ?," Dr. Gemma wrote "Complete neuropathy work-up, including genetic testing for hereditary hemochromatosis, was negative."

The ALJ gave several reasons for his determination that Dr. Gemma's opinions deserved less weight. First, the ALJ stated that although Dr. Gemma's opinions are consistent with Plaintiff's subjective complaints, they are inconsistent with the objective evidence of record. Consistent with the ME's testimony at the hearing, the ALJ noted that Dr. Gemma's opinion that Plaintiff "is unable to stand or walk for any amount of time is inconsistent with the evidence and

suggests that [Plaintiff] is wheelchair bound" (Tr. 19).  The ALJ further explained that Plaintiff has undergone multiple examinations demonstrating that she has full motor strength and equal reflexes in her upper and lower extremities (Id.).  He also noted that although examinations have shown that Plaintiff has decreased sensation to pinprick and light touch in her lower extremities, the physician interpreting Plaintiff's electromyelography found the results to be largely normal and that they showed no significant large fiber sensory or sensorimotor polyneuropathy (Id.). The ALJ also indicated that although physicians have taken note of Plaintiff's unsteady gait and difficulty toe and heel walking, no physician has recommended an ambulatory device for Plaintiff, and there is no evidence that Plaintiff uses an ambulatory device (Id.). The ALJ then stated that he assigned less weight to Dr. Gemma's opinions, as they are inconsistent with his examination findings and with the weight of the evidence.   The court finds that the ALJ's reasoning is well-supported by the evidence and "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight," and, therefore, is in compliance with the Social Security rules and regulations.  *See* SSR 96-2p, 1996 WL 374188, at *5.  The court also reiterates that an ALJ is required to give significant weight to the opinion of a treating source when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record."  *Rogers*, 486 F.3d at 242.  In this case, it appears that Dr. Gemma's extreme limitations are not supported by the objective medical evidence.  Based on the above, the court concludes that the ALJ did not err in his assessment of Dr. Gemma's opinion.

Plaintiff also complains that the ALJ erred in his assessment of Dr. Duterte's opinion. Dr. Duterte examined Plaintiff on October 30, 2006 and completed a Work Ability Form on November 15, 2006.  In her treatment notes, Dr. Duterte indicated that Plaintiff's diagnoses were anxiety disorder, depressive disorder, and a psychotic disorder related to sleeping problems (Tr. 464).  She also noted that Plaintiff had a history of alcohol abuse that had been in remission since October 2005 (Id.).  In the Work Ability Form, Dr. Duterte indicated that Plaintiff would be able to concentrate for only brief periods of time due to pain and anxiety and that, at this time, she likely could sustain tasks for half of a workday but that an eight-hour workday may be too stressful (Tr. 462).

In assigning less weight to Dr. Duterte's November 15, 2006 opinion, the ALJ stated that "Duterte's opinion is not supported in the record and is not supported by the notes from his [sic] one-time examination of [Plaintiff].  Duterte did not provide the basis for his [sic] opinion that [Plaintiff] would be unable to work for an eight-hour period" (Tr. 19).

Plaintiff argues that the ALJ was "completely inaccurate" in making the first of these statements, as Dr. Duterte treated Plaintiff for almost three years.   However, as the Commissioner notes, the evidence in fact reflects that Dr. Duterte completed the Work Ability form after only a single examination.  Courts have held that physicians who have examined a claimant only once do not qualify as "treating physicians" whose opinions generally are entitled to more deference.  *See e.g., Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 876 (6th Cir. 2007)* (holding that two doctors – one of whom examined the claimant only once and wrote a single "physical capacity evaluation," and the other of whom "examined [the claimant], completed a medical report, prescribed and refilled back pain medication, and denied additional medication

17

when Smith returned seeking more" – were not "treating physicians" for purposes of the treating physician rule); *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 507 (6th Cir. 2006) (holding that a doctor who examines a claimant only once does not qualify as a "treating physician").  Although Plaintiff may have begun a regular treating relationship with Dr. Duterte after  the first examination, that fact does not render her treating physician retroactively at the time she gave the November 2006 assessment.  *See id.* (finding that the relevant question is not whether a physician might have become a treating source at a later point, but rather whether the physician in question "had the ongoing relationship with Kornecky to qualify as a treating physician *at the time he rendered his opinion*") (emphasis in original).  Also relevant is the fact that Dr. Duterte appears not to have supplemented her November 2006 opinions regarding Plaintiff's work capacity at any later point during their nearly three year relationship.  *See id.*

Plaintiff further complains that it was error for the ALJ to reject Dr. Duterte's opinion because it was supported by her all of her observations, notes, diagnoses and treatment plans. For the reasons stated above, the court finds that Dr. Duterte's opinion, rendered after a single examination, was not entitled to any special level of deference, and that the ALJ was well within his "zone of choice" in choosing to give less weight to that opinion.  Furthermore, the ALJ in this case did not simply ignore the evidence submitted by Dr. Duterte, but rather summarized her opinions and explained why he gave those opinions less weight.  Specifically, the ALJ explained that Dr. Duterte's opinion was not supported by the notes from the examination that preceded her completion of the Work Ability form, and that she did not adequately explain her reasons for determining that Plaintiff could not sustain an eight-hour workday.    *See* 20 C.F.R. §§ 404.1527(d)(3); 416.927(d)(3) ("The more a medical source presents relevant evidence to

support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.  The better an explanation a source provides for an opinion, the more weight we will give that opinion."); *see also Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (noting that an ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation") (internal citations omitted).  Based on the above, the court finds that the ALJ did not err with respect to Dr. Duterte's opinion.

**D.      Whether the ALJ Erred in His Determination that Plaintiff Retains the RFC for a Range of Light Work**

Plaintiff next argues that the ALJ erred in finding that Plaintiff retained the capacity to perform a range of light work.  In support of this argument, Plaintiff claims that both the medical evidence and her statements regarding her symptoms demonstrate that she is unable to perform either light or sedentary work.

The ALJ found that Plaintiff retained the RFC to perform a limited range of light work.  Specifically, he found that Plaintiff could lift, carry, push, and pull up to 20 pounds occasionally and 10 pounds frequently; that Plaintiff had no restrictions in her ability to sit, stand or walk throughout an eight-hour workday; that Plaintiff could perform only low-stress work that required no negotiation, arbitration, confrontation, or responsibility for the safety or welfare of others; that Plaintiff was limited to only minimal, superficial contact with the public, co-workers and supervisors; that Plaintiff cannot perform work involving high production quotas or piece rate work; that she cannot work in proximity to heights, dangerous moving machinery or hazardous environments; and that she cannot drive a vehicle for work purposes or climb ladders, ropes or scaffolds (Tr. 18).

In making this finding, the ALJ assessed Plaintiff's credibility and the medical evidence appropriately and according to the regulations, ultimately giving great weight to the testimony that ME Dr. Goren provided at the hearing. *See* tr. 18-21. The purpose of the medical expert is to advise the ALJ on medical issues, answer specific questions about the claimant's impairments, the medical evidence, the application of the listings, and functional limitations based on the claimant's testimony and the record. *See* 20 C.F.R. §§ 404.1527(f)(2)(iii); 416.927(f)(2)(iii); *see also* HALLEX I-2-5-32. The ALJ may properly consider the opinion of a non-examining medical expert if he has given good reasons for rejecting the opinion of a treating physician – *see Daniels v. Soc. Sec. Admin.*, 23 Fed. Appx. 316, 317, 2001 WL 1321457 at *1 (6th Cir. Oct. 17, 2001) (citing 20 C.F.R. §§ 404.1527(d); 416.927(d)) – and it is the function of the ALJ to resolve conflicts in the medical evidence – *Gribbins v. Comm'r of Soc. Sec.*, 37 Fed. Appx. 777, 780 (6th Cir. 2002) (citing *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984)). In this case, the ALJ explained that he gave great weight to Dr. Goren's opinion because Dr. Goren reviewed the entire record, observed Plaintiff at the hearing, and testified under oath, and because Dr. Goren is a specialist in neurology. The ALJ also gave good reasons for discrediting the opinions of Dr. Gemma and Dr. Duterte. Based on the above, the court concludes that substantial evidence supports the ALJ's RFC finding.

Under *Varley v. Sec. of Health and Hum. Serv.*, 820 F.2d 777, 779 (6th Cir. 1987), "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays [plaintiff's] individual physical and mental impairments.'" In finding that Plaintiff could perform a significant number of jobs in the national economy, the ALJ relied on the VE's testimony in

response to a hypothetical that mirrored his ultimate RFC finding.  In response to the ALJ's hypothetical, the VE provided some representative jobs that such an individual could perform, such as checker, order clerk, and library clerk (Tr. 22, 496, 714-17).  Because the court concludes that the ALJ did not err by not including in his RFC finding additional limitations that would preclude the jobs identified by the VE, the ALJ's determination is supported by substantial evidence.

**E.     Whether the ALJ Abused His Discretion at Plaintiff's Hearing and Was Biased Against Plaintiff**

Finally, Plaintiff complains that the ALJ's behavior during her administrative hearing demonstrated a bias against her and ultimately denied her the right to a full and fair hearing.

"[T]he court must start from the presumption that administrative adjudicators are unbiased, and that honesty and integrity exist among them." *Wells v. Apfel*, 234 F.3d 1271 (Table), 2000 WL 1562845 at *5 (6th Cir. Oct. 12, 2000) (citing *Schwiker v. McClure*, 456 U.S. 188, 195-96 (1982) and *Navistar Intern. Transp. Corp. v. United States E.P.A.*, 941 F.2d 1339, 1360 (6th Cir. 1991)).  "The burden of overcoming the presumption of impartiality rests on the party making the assertion of bias, and the presumption can be overcome only with convincing evidence that a risk of actual bias or prejudgment is present." *Collier v. Comm'r of Soc. Sec.*, 108 Fed. Appx. 358, 364, 2004 WL 1922187 at *5 (6th Cir. Aug. 24, 2004) (internal citations and punctuation omitted).  "[A]ny alleged prejudice on the part of the decisionmaker must be evident from the record and cannot be based on speculation or inference." *Id.*  The burden to show bias is high.  For instance, in *Wells*, the court found that behavior that was "unbecoming a judicial officer" and "arguably discourteous" to plaintiff and her counsel was not enough to demonstrate bias. *Wells*, 234 F.3d 1271, 2000 WL 1562845 at *5; *see also Howard v. Astrue*,

21

2010 WL 1433438 at *5 (S.D. Ohio Mar. 17, 2010) (finding that the ALJ's statement to counsel, "[t]hen please shut up. Okay?," coupled with the fact that the ALJ stopped counsel's examination of plaintiff at two hearings, was not enough to show bias).

In this case, Plaintiff claims that the ALJ clearly was biased against her, as he repeatedly interrupted Plaintiff and her counsel at the hearing, prevented Plaintiff's counsel from fully cross-examining the experts, had obvious distaste for Plaintiff's smoking habit and used a mis-characterization of her testimony regarding that issue as a basis for discrediting her testimony, and generally "rushed" all the parties through the proceedings in a manner that deprived Plaintiff of a full and fair hearing. However, as Defendant notes, Plaintiff's hearing was 82 minutes long, resulted in 59 pages of transcribed testimony, and involved a total of four testifying witnesses. Although the ALJ initially expressed frustration over Plaintiff's calling a fourth witness when time was running short, the ALJ allowed the witness to testify. Neither expressions of frustration nor curt behavior establish bias. *See Collier*, 108 Fed. Appx. at 364; *Rollins v. Massanari*, 261 F.3d 853, 858 (9th Cir. 2001) ("'expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display' do not establish bias."). The ALJ also explicitly indicated in his written decision that he considered the testimony of each of the testifying witnesses, and his decision in general reflects careful consideration of the evidence. Finally, Plaintiff argues that the ALJ showed bias by mis-characterizing her testimony about how she pays for her cigarettes and using that mis-characterization to discredit her. However, this argument amounts to little more than an assertion that the ALJ's credibility determination is not supported by substantial evidence. For the reasons stated above, the court finds that the ALJ did not err in his credibility assessment. In

sum, Plaintiff has failed to put forward any evidence of bias, and the court accordingly finds no merit to Plaintiff's arguments regarding this issue.

## V.  <u>DECISION</u>

For the foregoing reasons, the court finds that the decision of the Commissioner is supported by substantial evidence.   Accordingly, the court AFFIRMS the decision of the Commissioner.


<u>s/ Kenneth S. McHargh</u>
Kenneth S. McHargh
United States Magistrate Judge


Date: <u>August 24, 2010.</u>